## THEODORE COOK *vs.* JAMES B. COUNCILMAN.

*Description of Property in Mortgage—Adverse Possession— Power of Appointment—Rule in Shelley's Case.*

A mortgage which conveys all the property which the mortgagor owns or holds any interest in, and all his right, title, interest and estate in a tract of land, is sufficient to convey the fee simple interest which the mortgagor had in the land by virtue of the Rule in Shelley's Case.

A purchaser may be required to accept a title to land which depends upon adverse possession.

A testator devised a tract of land to his nephew for and during the term of his natural life with power to dispose of the same by last will, and if the nephew should die without disposing of the same by last will, then the land was devised to the children which the nephew may leave living at the time of his death, their heirs and assigns forever; but if the said nephew should die without leaving a child or children or descendant thereof, and without disposing of the land by last will, then the land was devised to such person or persons as would, under the laws of the State of Maryland, inherit the same as the heirs of the nephew if he had died intestate seized in fee. *Held,* that this devise operates, under the Rule in Shelley's Case, to vest a fee simple title to the land in the devisee.

When land is devised to one for life with power of appointment by last will, and, in default of appointment, to his right heirs, the remainder limited to the right heirs becomes an executed fee in the life tenant under the Rule in Shelley's Case, subject to be divested by the execution of the power of appointment.

*Decided February 11th, 1909.*

Appeal from the Circuit Court for Baltimore County (BURKE, C. J.,)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, WORTHINGTON and HENRY, JJ.

*Archibald H. Taylor* (with whom was *H. Webster Cook* on the brief), for the appellant.

The advocates for the adoption of the Rule in Shelley's Case first put forward the rule, without the least regard to the particular terms of the provision to be considered, and then use the rule as a Procrustean bed, to which the plain expressions of the donor must be enforced to conform, without caring how the donor's expressions are distorted, dismembered, shorn, and sacrificed, in order to fit them to their idolized rule. But it has to be remembered that, while the Rule in Shelley's Case is law in Maryland, it is no favored law or policy, but on the contrary it is an outlawed or prohibited outcast by statute in far the majority of the States in the Union by reason of its obnoxiousness to the sense of justice of such people, and our Courts have declared that it shall never be applied as a mere technical rule, to defeat the manifest expressions of the testator's will. *Chelton* v. *Henderson,* 9 Gill, 436; *Reilly* v. *Bristow,* 105 Md. 326.

The next interest given after the life estate is to the child or children of said nephew, their heirs and assigns forever, and is contingent upon such children of said nephew or their children surviving said nephew.

This clause, unless it coalesces with the gift to the life tenant, so as to merge with it and form an estate of inheritance in the nephew James, extending that life interest to a fee tail, and consequently by the terms of our statute a fee simple, stands complete as it appears upon its face, as above stated, a contingent fee simple interest by way of remainder to the children of the nephew, James B., the life tenant.

We are, therefore, right up against the question, and that question is in its essence, whether this gift to the child or children, or descendants of the children of James B. Councilman, Jr., their heirs, and is a gift by way of limitation or of purchase. The answer has been made in this State man

times over, and in the shape in which appears here, the answer has been made in the. same way in England, where the
Rule in Shelley's Case was born.

The gift to children, *per se,* has a well-settl·.d significance.
The use of this word always or invariably imports purchase
and excludes the idea of limitation. *Stump* v. *Jordan,* 54
Md. 628; *Reilly* v. *Bristow,* 105 Md. 326.

The case of *Stump* v. *Jordan* shows that even if the broader
word than "children"—"issue"—had been used, and if the
expression, "if my said nephew should depart this life without leaving a child or children or descendant or descendants
of a deceased child or children living at the time of his
death," served to convert the words used, "a child or children," into the equivalent of "issue," "issue" would still be
a word of purchase and not of limitation. There is one special qualification which, if attached to the words "issue" or
"heirs of the body," or even "heirs," always makes the taking
one by way of purchase and not by limitation, and that is
where the children, issue or heirs to whom the estate is given
following the apparent life estate, are themselves made the
starting point of a new inheritance. That is the case here:
"If my nephew shall depart this life * * * then from
and after his death I give and devise the same to the child
or children which he, my said nephew, may leave living at
the time of his death, their heirs and assigns forever."

· It seems to us that this qualification or explanation of the
word "heirs" which is here so clearly expressed, settles the
whole case, for there is no doubt that it is the law of Maryland, and the line of cases laying it down are unbroken by
any dissent whatsoever. These cases have been collected and
affirmed as the law in Maryland by the Supreme Court of
the United States, and which asserts, as the Maryland cases
also assert that this is the prevailing rule of the English authorities.

The doctrine in *Ware* v. *Richardson,* 3 Md. 544, is that of
the English case of *Luddington* v. *Kime,* and it was reviewed
and affirmed in *Shreve* v. *Shreve,* 43 Md., which in turn was

reviewed and adopted by the Supreme Court of the United States in *De Vaughn* v. *Hutchinson,* 165 U. S. 556, and is the universal law of the land wherever the Rule in Shelley's Case is sought to be applied.

"The word 'heirs,' in order to be a word of limitation, must include all the persons in all generations belonging to the class designated by the law as heirs, but the devise here was to Martha Ann for life, and at her decease to her heirs begotten of her body, and to *their* heirs and assigns, a restricted class of heirs, and this limitation shows that it was the intention of the testator that Martha Ann's children should become the root of a new succession and take as purchasers and not as heirs." *De Vaughn* v. *Hutchinson,* 165 U. S. 580.

We repeat that this rule is even clearer and more controlling when the words of limitation are superadded to the words "issue" or its equivalent, rather than to the word "heirs." Additional cases in Maryland setting out this doctrine are as follows: *Horne* v. *Lyeth,* 4 H. & J. 435; *Fulton* v. *Harmon,* 44 Md. 263; *Clark* v. *Smith,* 49 Md. 117; *Henderson* v. *Henderson,* 64 Md. 185; *Stonebraker* v. *Zollickoffer,* 52 Md. 154.

The same decision was reached in *Kuntzleman's Appeal,* 136 Pa. St. 152, where the will contained almost exactly the words of this latter clause. The same in *Earnhart* v. *Earnhart,* 127 Ind. 397.

Other cases to the same effect and all excluding the rule from application to a gift in the terms of this are *Martlin* v. *Martlin,* 55 N. J. Eq. 772; *Barges* v. *Thompson,* 13 R. I. 712.

The Court is especially prayed to consider the decision in *Evans* v. *Evans,* 2 Ch. Div. L. R. 173 (1892), where the limitation was to E. with an ultimate remainder, "to the use of such person or persons as at the decease of E. shall be his heir or heirs at law and to the heirs and assigns of such persons," which decision shows how fully after some debate the decision in *Luddington* v. *Kime* has been recognized as law in England, and that the law of England, where this rule

originated, is in full harmony with the law of Maryland and the law of all the United States where the rule is still in force.

After the gift, then, of the life estate to his nephew, James B. Councilman, Jr., with remainder to his children, what becomes of the gift over? Our answer is that the question has no bearing upon the case, but all its possibilities may be considered without disturbing the conclusion reached by the authorities quoted.

Of course, if the remainder to the children of James B. Councilman, Jr., had been a vested remainder, being in fee, there would be nothing left which could be the subject of a gift over, and it would be simply void, as was illustrated by the case of *Coombs* v. *Coombs,* 67 Md., page 11. But it was plainly contingent—contingent upon these children surviving their father. If they survived their father, of course this gift to them became vested and was exclusive, and there was nothing which could become the subject of the gift over. But the same moment, viz, the death of James B. Councilman, Jr., must necessarily determine the contingency, whether the gift would vest in the children of James B. Councilman, Jr., or whether it would fail them and the other contingency take effect, viz, whether it would pass to the persons designated in the gift over. Therefore it is plainly a contingency with a double aspect. It would seem that this second contingent estate is a contingent remainder rather than an executory devise, because it must necessarily vest immediately upon the determination of the life estate of James B. Councilman, Jr., if it is not excluded by the operation of the first alternative remainder in favor of the children of James B. Councilman, Jr. But it does not make any matter whether it is a contingent remainder or whether the persons who shall take under it would, except for the terms of the intervening estate, which undoubtedly, as aforesaid, convey an estate by purchase, meet the requirements of those who take by limitation rather than by purchase. Inasmuch as it is merely part of a gift or an alternate gift to one which is plainly charac-

terized as by purchase, it would seem necessary to make this portion or alternative also one by purchase, and in fact where the term has been before this Court it was so determined to be. See *Handy* v. *McKim,* 64 Md. 560.

Of course, no claim can possibly be made that this second alternative contingent remainder in fee can be considered by itself in connection with the original gift of the life estate to James B .Councilman, Jr., to work a merger so as to exclude the first alternate gift in fee, if the first alternate gift in fee be a valid one, *i. e.,* not obnoxious by reason of the violation of any rule of perpetuities or other public policy. We would have no right, of course, to exclude the first estate from consideration, and of course it is a well-known requisite of a merger that the remote and larger estate cannot coalesce with the previous estate so as to cut out any intermediate contingent estate created by the same act which created the other estates. *Preston on Merger,* page 110.

In a word, if the gift to the children of James B. Councilman, Jr., which is, as we have above described it, the *second* gift in point of persons and time of the whole complete exhausted gift which the testator in that will makes of the estate called "Woodhome," is a valid remainder upon a contingency to those children, there is no occasion for this Court now to discuss, nor will there ever be occasion to discuss whether the second or alternative contingent estate comes to the persons designated to receive it as a contingent remainder or an executory devise or by way of purchase or by way of limitation.

*J. J. Alexander* and *W. R. Townsend* filed a brief for Alice M. Cockey, a presumptive heir and creditor of James B. Councilman.

1. It is said that under the Rule in Shelley's Case, James B. Councilman did take an indefeasible estate in fee simple in the tract called "Woodhome," and that consequently the appellant takes the clear title in fee, which cannot be disturbed by any child James B. Councilman may leave nor by the exercise of his testamentary power.

But the law is laid down in *Fearne, Contingent Remainder,* ch. 1, sec. 5, sub-sec. 6, to the contrary: "The general rule of law respecting the subsequent limitation to the heirs of the body and vesting in the ancestor where he takes a preceding freehold by the same conveyance does not operate so absolutely as to merge the particular estate of freehold where the limitations intervening between the preceding freehold and such subsequent limitation to the heirs, etc., are contingent because that would destroy such intervening limitations, but the two limitations are united and executed in the ancestor only until such time as the intervening limitations become vested, and then open and become separated in order to admit such intervening limitations as they arise. Thus, where there was a limitation to baron and *feme* for their lives, remainder to the first and other sons of the marriage successively in tail—remainder to the heirs male of the bodies of the baron and *feme*—the Court resolved that it was an estate tail executed in the baron and *feme, sub modo;* that is, so as not to merge the estates for life absolutely, but executed only till the birth of the first son; and that then the estates should become divided by operation of law, and the baron and *feme* become tenants for their lives with remainder to their first and others sons, remainder to baron and *feme* in tail." 11 Rep. 80, *Lewis Bowles' Case.*

If, therefore, James, the devisee, should leave a will disposing of the property, or if he should die intestate, leaving issue living at the time of his death, the supposed contingent remainder to his heirs would be void.

With respect to his testamentary power, it was held by this Court, in 60 Md. 64, *Wilks* v. *Burns,* that the donee of a testamentary power could not by any *mesne* contract fetter the power, "for," says the Court, "the donor intended that it should remain under the control of the donee until the moment of his death." And consequently the nephew here may exercise his power at any time during his life and defeat any *mesne* incumbrances imposed by him on the estate after his life estate.

2. The Court below held that the Rule in Shelley's Case applied to the devise of "Woodhome" to James B. Councilman, and that he therefore took an estate in fee.

It cannot be denied that in 9 Gill, 432, *Chelton* v. *Henderson,* the Rule in Shelley's Case as applicable to devises in Maryland received a severe shock, and in 105 Md. 326, *Reiley* v. *Brislow* (see 44 Md. 251, *Fulton* v. *Herman*), this Court has said that "the Courts of this State have always struggled against the application of the rule, and have *searched* the will or deed for some inconsistent provision or *word* which would exclude the application."

Now, in the first place, in order to try whether the rule applies, it is first necessary to construe the instrument in question as if such a rule did not exist. This is explained in (1892) 2 Ch. 173, *Evans* v. *Evans.*

Now, we find as to this will that where the testator intended to give a fee simple, he knew how to express himself in proper terms. In this very clause the gift to the children of James B., Jr., in default of the exercise of his power by him, is to his child or children  *  *  *  "their heirs and assigns forever." So his gift of his residue, real and personal, in the tenth clause of the will, is to his nephews, Charles and William T., "their heirs, personal representatives and assigns." And in the third clause he gives farm, chattels and furniture, etc.—*i. e.,* perishable articles—to his nephew, J. B., by the appropriate term "absolutely" in contrast to the gift to him of the land for his life. Again, in the annuities bequeathed by the fourth and fifth clauses of his will he directs them to be paid by his nephew, James B., Jr., during his life, and the annuities are commuted after his death and made charges, as they are in his lifetime, upon the farm "Woodhome," "to whomsoever the same may then (*i. e.,* at the death of James B., Jr.) belong," these gifts being striking indications of his intent that James B. should only have a life estate in "Woodholme." And if the words, *"to whom the same may then belong,"* in case of the appointees, if any, under the power or in the case of children or descendants of

James B., Jr., under the gift to them if he should leave issue, signify, as they must do, persons taking by purchase, the same construction must be put on the words "heirs" in the ultimate gift over. When he comes to the gift over, in default of the exercise of the power and of issue of James B., Jr., we would expect that if he intended the "heirs" of James B., Jr., in the same sense as he intended the "heirs" of the children of James, Jr., in the gift to them and the "heirs" of his nephew, Charles and William, in the residuary clause of his will, he would have used the same expression, and no reason can be suggested why he did not, except that he did not intend the word "heirs" on the gift over in the second clause in the same sense as in the other cases. If so, it is the same as if he had used a different word than "heirs."

Again, the words in the ultimate gift over in the second clause are that in the events mentioned, " I (the testator) give and devise said farm to such person or persons as would under the laws of the State of Maryland inherit the same as the heirs of my said nephew if he had died intestate seized in fee thereof."

Is this clause the same as if the testator had said simply that in the events mentioned, "I give and devise the same to the heirs of my said nephew"?

First, the expression is different. It is given to "such persons as *would* inherit as his heirs *if he had died intestate seized thereof"*—which words negative the idea that he could or would in fact die seized thereof, and are not positive but similitudinary, and consequently point not to a line of succession, but to individuals who should occupy a certain relation to him at the time of his death. Laying the Rule in Shelley's Case aside, as we must do in construction of the will one would say that the testator meant to "describe and did describe" the "person or persons" who were to take in the event of the failure of his previous gifts, which is exactly the *"descriptio personæ"* of the taker, which excludes the application of the Rule in Shelley's Case. He describes them as those who would inherit as heirs of his nephew upon a suppo-

sition, which is contrary to the fact, else there would be no need of the supposition.

"If," says the testator, "the tenant for life dies childless and intestate (he having a testamentary power). I give the property to the person or persons who would have taken from him as his heirs if he had died intestate, and tenant in fee;" and a man's heirs are included in himself, which is the reason of the Rule in Shelley's Case, but here that cannot be said, since not his heirs generally, but those persons only who fit a particular description at his death, which is necessary to create their right.

In this we add the terms of the express gift to the nephew for life and next the testamentary power; although these by themselves would not be conclusive, yet it has never been denied that in conjunction with other circumstances or other language used by the testator, they ought to, and do have an important effect. Besides the ultimate limitation under the Rule in Shelley's Case must be to the heirs of the person having the life estate as a class, meaning "heirs" in the common meaning of "all the heirs." But the "heirs" of the nephew, according to the common meaning of the term, have been provided for, and the limitation deals only with his collateral heirs, because his issue are supposed entirely extinguished. And, lastly, the ultimate limitation is by way of executory devise. *Fearne, Contingent Remainders,* 296; Prec. in Ch. 72, *Lloyd* v. *Carew.*

No remainder can be limited after a remainder in fee. A contingent remainder in fee may indeed be limited in substitution for another contingent remainder in fee. This is called a contingency with a double aspect. Such remainders are, however, concurrent with each other, and not consecutive, and not remainders one upon the other, and must be of the same quality and nature—*i. e.,* if one is to a purchaser, the other must also be. But a consecutive or subsequent contingent remainder in fee cannot be limited upon another contingent remainder in fee. Therefore the ultimate limitation here is an executory devise, to which the Rule in Shelley's

Case does not apply. For the estate to be created under the power may be one contingent remainder in fee; the devise to the children of his nephew and their heirs another contingent remainder in fee, and to make the ultimate limitation a contingent remainder would create "a contingency with a treble aspect."

But the estate is to go to those persons who would under the laws of Maryland inherit, etc. Now the Code, Article 40, Inheritance, section 1, provides as follows: "If any person seized of an estate in lands, or in this State in fee simple or fee simple conditional, or an estate in fee tail general, shall die intestate thereof, such lands, tenements and hereditaments shall descend in fee simple to the kindred male and female of such person in the following order, etc.:"

First, to the child or children, and, if none, and the estate descended on the part of the father, then to the father, etc. But if the estate shall vest in the intestate by purchase, etc., it goes in default of children in a different manner.

To which set of heirs, assuming we would apply the Rule in Shelley's Case, would the estate go? The children of the nephew are excluded and he is not actually seized, but only supposed to be seized in fee of the land, but it does not appear how. In all properly drawn instruments where the draftsman has to resort to the roundabout expression used in this will the phrase is always as if he had died seized of an estate in fee by descent or an estate in fee by purchase. The distinction is important, and the result is that as it cannot be known who are the heirs, whether one set or the other (children and descendants of the nephew being excluded by the direct devise to them), the ultimate devise over is void for uncertainty and the property would descend as a void devise to the heirs of the testator. *Tongue* v. *Nutwell,* 13 Md. 412; *Handy* v. *McKim,* 64 Md. 560; *Bradley* v. *Cartwright,* L. R., 2 C. P. 511.

3. To look now at the authorities. In *Handy* v. *McKim, supra,* it was held that a similar expression to that used in this will did not carry the fee because the word "heirs" was omitted, though it cannot be denied that the expressions used

was equipollent, but for distinction suggested by the Court.

In 127 Ind. 397, *Earnhart* v. *Earnhart*, the clause was to W. E. for life with remainder in fee to the "persons who would have inherited the same from W. E. had he owned the same in fee at the time of his death," and it was held that it unequivocally appeared that the remaindermen were not to take as heirs of W. E., and so is 131 Penn. St. 152, *Kuntzleman's Appeal.*

But what appears to be a strong authority on the subject is (1892) 2 Ch. 173, *Evans* v. *Evans.* There by deed land was limited to the use of E. for life, with an ultimate limitation to the use of "such person or persons as at the decease of the said E. shall be his heir or heirs at law, and of the heirs and assigns of such person or persons." And it was held that the Rule in Shelley's Case did not apply, and that E. took, not an estate in fee simple, but merely a life estate, with a contingent remainder in fee to the person or persons who at his death answered the description of his or her heirs at law. The whole subject is investigated so thoroughly in this case that it would be wrong to do more than refer the Court to it.

4. But the creditors are not without remedy. For by 3 and 4 W. & M., c. 14, the Statute of Fraudulent Devises, *Alexander's British Stat.* 573, the second section of this Statute avoids all testamentary dispositions whereof the testator at the time of his death was seized in fee in possession, reversion or remainder or over which he had a general power of appointment whereby creditors might otherwise be defrauded. We refer to the note in this Statute and insist that the Woodholme farm on the death of the nephew would be assets for the payment of his debts.

*William S. Bryan, Jr.* (with whom was *D. G. McIntosh* on the brief), for the executor of Sadie C. Councilman.

Under the Rule in Shelley's Case, the limitation in the will gave an estate in fee simple to James B. Councilman. It gave him the property for life, with power to dispose of the

same by will, and if he did not dispose of the same by will it gave the property, after his death, to precisely the same class of persons, in precisely the same order, and with precisely the same tenure, as they would have taken as James B. Councilman's heirs. This, under the authorities, gave James B. Councilman, the first taker, the fee simple estate.

Fearne says that Lord Thurlow laid down the Rule in Shelley's Case thus: "That in all cases where the limitation was of an estate of freehold to a man, and afterwards to the heirs of his body ( whether general or special), so as to give it to the heirs as *a denomination or class,* the heirs should be in by descent and not by purchase." *Fearne on Remainders,* mar. page 135. See also *Ware* v. *Richardson,* 3 Md. 544, 545; *Smith* v. *Clark,* 49 Md. 120; *Stump* v. *Jordan,* 54 Md. 630, 631; *B. & O.* v. *Patterson,* 68 Md. 609; *Brown* v. *Renshaw,* 57 Md. 67, 68; *Mason* v. *Ammon,* 117 Pa. St. 127; *Dickson* v. *Satterfield,* 53 Md. 321; *Sheely* v. *Neidhammer,* 182 Pa. St. 163; *Thomas* v. *Higgins,* 47 Md. 440; *Shapley* v. *Deihl,* 203 Pa. St. 566; *Lyles* v. *Digges,* 6 H. & J. 364, 370; *Reilly* v. *Bristow,* 105 Md. 326; *Simpers* v. *Simpers,* 15 Md. 160.

To the same effect is the ruling of the Supreme Court of North Carolina in the case of *Wool* v. *Fleetwood,* 136 N. C. 460; 67 *L. R. A.* 444.

Under the elder Mr. Councilman's will the devolution of the property is precisely the same as would have been if he had simply said that his nephew, James B. Councilman, was to take the estate in fee simple. In this latter event, James B. Councilman would have possessed the estate for life with power to dispose of it by will, and in the default of such disposition it would have gone to any child or children he might have left "living at the time of his death, their heirs and assigns forever, the child or children or descendants of any of a deceased child or children, or descendant * * * to take part to which the parent would, if living, be entitled. But if my said nephew should depart this life without disposing of said farm by his last will and testament, and without leav-

ing a child or children or descendant or descendants of a deceased child or children living at the time of his death, then from and after the death of my said nephew, I give and devise said farm to such person or persons as would under the laws of the State of Maryland inherit the same as the heirs of my said nephew if he had died intestate seized in fee thereof." This estate so devised has all the incidents of an estate in fee, and, as JUDGE MILLER quotes from *Lord Cokes* "No man can institute a new kind of inheritance not allowed by law." (68 Md. 608.)

It is not the *name* by which the devise is called which affects its character. It is the incidents and the method in which the title shall devolve which determine the character and quality of the estate. See also *Waller* v. *Pollitt,* 104 Md. 172; *William* v. *Duncan,* 92 Ky. 125; *Childers* v. *Logan,* 65 S. W. Rep. 124; *Mason* v. *Ammon,* 117 Pa. St. 127; *Echols* v. *Jordon,* 39 Ala. 24; *Seeger* v. *Leakin,* 76 Md. 500-506; *Josetti* v. *McGregor,* 49·Md. 202; *Baird* v. *Brookin,* 12 L. R. A. 157, 158; *Fowler* v. *Black,* 11 L. R. A. 670.

BRISCOE, J., delivered the opinion of the Court.

James B. Councilman, of Baltimore County, on the first day of October, 1900, executed and delivered to Sadie C. Councilman, his wife, a mortgage of all his interest and estate in a tract of land called "Woodhome," situated in Baltimore County, to secure the payment of a promissory note for $72,500.

A default having been made in the payment of the mortgage debt, the mortgaged real estate was sold under a decree of the Circuit Court for Baltimore County and purchased by the appellant for $42,500. The sale was duly reported to the Court below for ratification.

To the report of sale, made by the trustees on the 29th of May, 1908, exceptions were filed by certain judgment creditors of Councilman, and also by the purchaser, the appellant.

There is no appeal from the order of ratification of sale on

the part of the creditors, and their exceptions will not be considered.

The exceptions of the appellant raise three objections to the title to the property. First, it is contended that James B. Councilman only had a life estate in the property, and he only intended to charge the same, consequently the decree to sell and foreclose cannot vest in the purchaser anything more than an estate for his life. Second, that in a small part of the land sold, to wit, two acres thereof, there is an outstanding leasehold interest, under a lease dated December 28th, 1812; and third, that James B. Councilman did not have a fee simple title to "Woodhome," the property sold. And from an order of the Circuit Court for Baltimore County overruling the exceptions and ratifying the sale, the purchaser has appealed.

As to the first exception, we need only say it is clear from the language of the mortgage itself that its purpose and effect was to convey whatever estate the mortgagor had in the property. The mortgage was executed in pursuance of an agreement contained in a promissory note dated October 2, 1899, given by Councilman to his wife, to the following effect: "To transfer to Sadie C. Councilman, as security for the payment of said note *all right* and *interest* the said James B. Councilman should own or hold in and to *any real* or personal property, whenever the said Sadie C. Councilman should demand the same." It is also certain from the terms of the mortgage, dated Oct. 1, 1900, it was intended to embrace whatever interest the mortgagor had in the real estate.

The mortgagor conveyed "all and every part of the property, real and personal. * * * which he owns or has or holds any interest or right in or to of any nature, kind or description whatsoever and wherever the same may be, especially including all his right, title, interest, estate and claim in and to that tract of land known as 'Woodhome Farm' situated in the Third Election District of Baltimore County." To have and to hold such of the aforesaid property or inter-

est therein, as may be owned by the said James B. Council-
man in fee, to the said Sadie C. Councilman, etc.

The second exception is also without merit. It appears
from the evidence that the mortgagor and his predecessors in
title had been in adverse and exclusive possession of all the
land in question for more than forty-five years, and that the
alleged leasehold interest is barred by limitations. A title by
adversary possession is therefore clearly established in that
part of the land in dispute. *Allen* v. *Van Bibber,* 89 Md.
436; *Lurman* v. *Hubner,* 75 Md. 268.

The third exception presents the important question in the
case, and that is, whether James B. Councilman owned the
property called Woodhome in fee simple, so that the appel-
lant as purchaser under the mortgage acquired a valid title
thereto. And this depends upon whether James B. Council-
man under the will of his uncle, the elder Mr. Councilman,
acquired a fee simple estate in the property here in contro-
versy and known as "Woodhome."

The property was devised by the following clause of the
elder Mr. Councilman's will: "I give, devise and bequeath to
my nephew, James B. Councilman, Jr., the farm on which I
now reside, known by the name of 'Wood Home,' and contain-
ing about two hundred and twenty acres of land, more or less,
for and during the term of his natural life, with full power
and authority to him, my said nephew, to dispose absolutely
of the same, by his last will and testament duly executed.
If my said nephew shall depart this life without disposing of
the said farm by his last will and testament, then from and
after his death I give and devise the same to the child or chil-
dren which he, my said nephew, may leave living at the time
of his death, *their heirs and assigns forever; the child or
children or descendant or descendants of a deceased child or
children of my said nephew to take the part to which the
parent would, if living, be entitled;* but if my said nephew
should depart this life without disposing of the said farm
by his last will and testament and without leaving a child or
children or descendant or descendants of a deceased child or

children living at the time of his death, then from and after the death of my said nephew, I give and devise said farm to such person or persons as would, under the laws of the State of Maryland, inherit the same as the heirs of my said nephew if he had died intestate seized in fee thereof."

It is urged upon the part of the appellee that this devise operates under the Rule in Shelley's Case to vest a fee simple title to the property in the mortgagor or devisee. And the appellant contends that the interest the devisee acquired was a mere life estate with limited powers.

Now in the construction of this devise, so far as the question here involved is concerned, the power of testamentary disposition given to Mr. Councilman need not be considered, because as was said by JUDGE ALVEY in *Brown* v. *Renshaw,* 57 Md. 78, it is now well settled that the mere power of appointment is wholly ineffective until the power be executed; and in case of a limitation to one for life, with power of appointment, and, in default of appointment, to his right heirs, the remainder limited to the right heirs will become an executed fee in the taker for life, under the Rule in Shelley's Case, subject to be divested by the exercise of the power. *Cunningham* v. *Moody;* 1 Ves. 174; *Doe* v. *Martin,* 4 Dunf. & East. 64.

It was also held in *Brown* v. *Renshaw, supra,* that a conveyance of the property in fee simple effectually extinguished and destroyed the power. *Webb* v. *Shaftesbury,* 3 M. & K. 599.

The devise in this case, then, is in effect to Councilman for life, and upon his death to his child or children, and their heirs, and in case of his death without leaving a child or children or descendants, then "to such person as would, under the laws of Maryland, inherit the same as the heirs of my said nephew, if he had died intestate seized in fee thereof."

The phrase in the will, "such persons as would inherit as heirs," has practically the same effect as if the limitation over had been merely to the "heirs of my said nephew." There can be no logical distinction between the heirs of Councilman

and those persons who would inherit as his heirs if he had died intestate.

The land after the life estate is made to descend to precisely the same classes of persons as would take, if Councilman had been the owner in fee. The gift over is to his children or heirs as the line of succession.

In *Ware* v. *Richardson,* 3 Md. 544, this Court adopted the following definition of the Rule in Shelley's Case laid down in *Preston on Estates,* Vol. 1, p. 263, and approved by CHANCELLOR KENT: "When a person takes an estate of freehold, legally or equitably, under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs or heirs of his body, as a class of persons to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate."

While the Rule in Shelley's Case has been abrogated by statute in many of the States, it remains the law in this State and must be enforced. *Waller* v. *Pollitt,* 104 Md. 173; *Thomas* v. *Higgins,* 47 Md. 451.

It is a rule of law, and not of construction.

If it appears, upon the face of the will, that the limitation over after the life estate is to the heirs of the life tenant, and that they take as his heirs and not as purchasers, then, the rule applies as matter of law. In such case the particular intent that the first taker shall possess only a life estate might yield to the general intent that his heirs shall inherit from him.

Thus in *Simpers, Lessee,* v. *Simpers,* 15 Md. 187, it is said that there is no rule better established than that when there is a particular intent expressed in a will and a general intent inconsistent therewith expressed in the same will, the latter must prevail.

In *Jones* v. *Morgan,* 1 Brown's Ch. Rep. 206, LORD THURLOW said, that where the estate is so given that it is to go to every person who can claim as heirs to the first taker the word

"heirs" must be a word of limitation, all heirs, taking as heirs, must take by descent.

The word "children" used as a description of the persons who are to take after the life estate, is often construed to be a word of purchase and not of limitation. *Stump* v. *Jordan*, 54 Md. 628. But in the case of the devise now being considered the word "heirs" is used as well as the word "children," and that word is strictly one of limitation. The ultimate gift over to the heirs of Councilman in default of children indicates a general intent that the estate should descend to his heirs and operates to enlarge the effect of the word "children" antecedently used.

Th limitation over ,therefore, is to the children or heirs of the life tenant. The general intention of the testator was, that his nephew should be the root of succession from which future takers should come and that they should take as his heirs.

In *Shapley* v. *Diehl*, 203 Pa. St. 568, land was conveyed "to Shapley for the term of his natural life and at his death to his children or heirs." The Court in that case held that the phrase "children or heirs" means "heirs of the grantee of the life estate, the word 'heirs' being used as a synonym to enlarge and explain the preceding word, which might otherwise fail of its real intendment. The words, therefore, naturally and properly seem to express the intent that the donees in remainder should take not from the donor directly as purchasers, but in succession by inheritance from the grantee of the life estate." *Sheeley* v. *Neidhammer*, 182 Pa. St. 163; *Mason* v. *Ammon*, 117 Pa. St. 127.

We have carefully examined the cases cited by the appellant's counsel in their very able brief, but find nothing in them in conflict with the conclusion we have reached, and that is, this case falls within the Rule in Shelley's Case, and that James B. Councilman acquired under the will a fee simple estate in the farm called "Woodhome," devised under the will.

The sale being in all other respects valid, the purchaser at

this sale will acquire the fee simple title to the property sold thereunder. Finding no error in the order of the Circuit Court for Baltimore County, passed on the first day of September, 1908, overruling the exceptions and ratifying and confirming the sale, it will be affirmed.

*Order affirmed with costs.*