## CARRIE V. HALL vs. SARAH W. GRADWOHL ET AL.

*Devise and Legacy—Rule in Shelley's Case.*

A testator devised the residue of his estate, after the termination of the life estate therein of his wife, to his five children, with the proviso, "that the portion to which my daughter Sarah may be entitled shall be invested in some safe stocks or other securities, the said Sarah to receive the income from the same during the term of her natural life, and at her death, to be equally divided among her children or legal heirs." Under an order of the Orphans' Court relating to the share of Sarah, certain ground rents were conveyed to her upon the same terms and conditions as expressed in the will. *Held,* that the testator did not intend to use the words "legal heirs" in their full technical sense, but that the provisions of the will plainly manifest the particular intent to use these words

as a designation of the individuals who were to take as purchasers after the death of Sarah, and that consequently this devise is not within the Rule in Shelley's Case so as to give Sarah an absolute estate, but that she took only a life estate in the ground rents with remainder to her children.

*Decided April 20th, 1910.*

*Opinion upon motion for re-argument, June 23rd, 1910.*

Appeal from the Circuit Court of Baltimore City (STOCK-BRIDGE, J.).

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS and URNER, JJ.

*Henry W. Fox,* for the appellant, submitted the cause on his brief.

*Arthur L. Jackson,* for the appellee.

BURKE, J., delivered the opinion of the Court.

On December 10th, 1909, the appellant entered into a contract with the appellees to purchase certain property in the City of Baltimore. This property is particularly described in the contract of purchase, wherein it is declared that all its terms and provisions shall be null and void, unless the vendors had a good and merchantable title to the property. The appellant refused to complete the purchase upon the ground that the appellees could not convey a good title. They thereupon instituted a suit for the specific performance of the contract, and from the decree of the lower Court which required her to complete the purchase, the appellant has brought this appeal.

The facts are undisputed, and those that need be stated are: That on the 10th day of August, 1868, Philip Weitzler of Baltimore City, executed his last will and testament by

which he disposed of his estate as follows: "I give to my wife Caroline Weitzler all the property of which I may be possessed at the time of my death, whether real, personal or mixed, with power to dispose of and have absolute control of the same during the term of her natural life, and at her death to be disposed of as follows: Five hundred dollars and my piano to my daughter Mena Weitzler; five hundred dollars to my daughter Henrietta Weitzler, the balance of my estate to be equally divided among my five children or their heirs, share and share alike, with this proviso: That the portion to which my daughter Sarah Gradwohl may be entitled shall be invested in some safe stocks or other securities, the said Sarah Gradwohl to receive the income from the same during the term of her natural life, and at her death to be equally divided among her children or legal heirs."

After the death of the testator, this will was proven, and admitted to probate by the Orphans' Court for Baltimore City. By the final account of Samuel J. Harman, the administrator *d. b. n.* of Philip Weitzler, the sum of one thousand and sixty-one dollars and seventy-seven cents was distributed to Sarah Gradwohl, and this sum was deposited by Mr. Harman, under an order of the Orphans' Court for Baltimore City, in the Central Savings Bank, the interest to be subject to the order of Sarah Gradwohl for life, and the principal subject to the further order of the Court. On the 14th day of November, 1884, upon the petition of Sarah Gradwohl, the Orphans' Court ordered that she withdraw this money, and authorized her to invest it in the purchase of two ground rents issuing out of two contiguous lots of ground in the City of Baltimore on the southwest side of Chew and Chappel streets. The order provided that the "investment shall not be deemed made as herein directed until there be executed, acknowledged and delivered in due form of law a good and sufficient deed conveying and assuring to Sarah Gradwohl tenant for life with a remainder

over to her children or legal heirs the fee simple property hereinbefore mentioned." ·

By the authority of this order, Sarah Gradwohl purchased from Riley E. Wright and wife on November 17th, 1884, the two ground rents or reversions in fee mentioned in her petition and involved in this suit. The deed recited that the property is granted and conveyed under the order of the Orphans' Court of Baltimore City, dated November 14th, 1884, "unto Sarah Gradwohl for and during the term of her natural life, and at her death to be equally divided among her children or legal heirs." Caroline Weitzler, the widow, is dead.

The single question involved in this appeal is, what interest, or estate passed to Sarah Gradwohl under the will of her father, Philip Weitzler? If she took an absolute interest in the property devised or bequeathed to her by the will, it is conceded that the decree must be affirmed; if, however, she took a life estate only, the decree must be reversed, because in that event she cannot convey a good and merchantable title to the vendee. The position of Sarah Gradwohl is that under the rule in *Shelley's case* she took an absolute interest in all the property which passed to her under her father's will. JUDGE McSHERRY in *Travers* v. *Wallace,* 93 Md. 512, said that "it is a settled and inflexible rule of property, so firmly imbedded in our jurisprudence as to be beyond modification or repeal except by legislative enactment, that when a person takes an estate of freehold, legally or equitably, under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate. 1 *Preston on Estates,* 263. This doctrine is called the *Rule in Shelley's case,* 1 Co. 104. It has nothing to do with the testator's intention.

It is a rule of property and overrides the intention.  In fact wherever applicable, it may be said that it disregards the intention altogether; for whilst the intention may confessedly have been to give but a life estate the rule converts that life estate into a fee by treating the terms of the gift over to the heirs as a limitation of the estate and not as words of purchase."

But this rule has some well recognized exceptions, and is never to be applied in total disregard of the sense in which the testator has used technical words of inheritance.  Mr. Hargrave in his *Observations concerning the rule in Shelley's case,* 1 Hargr. Law Tracts, 575-577, states, that when it is once settled that the donor or testator has used words of inheritance according to their legal import; has applied them intentionally to comprise the whole line of heirs to the tenant for life; and has really made him the terminus or ancestor, by reference to whom the succession is to be regulated; then it will appear, that being considered according to those rules of policy from which it originated, it is perfectly immaterial whether the testator meant to avoid the rule or not, and that to apply it, and to declare the words of inheritance to be words of limitation, vesting the inheritance in the tenant for life as the ancestor and terminus to the heirs, is a matter of course.  But on the other hand, if it be decided, that the testator or donor did not mean by the words of inheritance after the estate for life, to use such words in their full and proper sense, nor to involve the whole line of heirs to the tenant for life, and include the whole of his inheritable blood, and make him the ancestor or terminus for the heirs; but intended to use the word heirs in a limited, restrictive and untechnical sense, and to point at such individual person, as should be heir, of a tenant for life at his decease, and to give a distinct estate of freehold to such single heir, and to make his or her estate of freehold the groundwork for a succession of heirs, and constitute him or her the ancestor terminus and stock for the succession to take its course from,

in every one of these cases the premises are wanted, upon which only the rule in *Shelley's case* interposes its authority, and that rule becomes quite extraneous matter.  2 *Coke Littleton,* 150 (note).

In *Clarke* v. *Smith,* 49 Md. 116, it is said to be "a well settled rule of construction, that technical words of limitation used in a devise, such as *heirs* generally, or *heirs of the body,* shall be allowed their legal effect, unless from subsequent *inconsistent* words it is made perfectly plain that the testator meant otherwise.  Or, to use the language of LORD ELDON, in *Wright* v. *Jesson,* 2 Bligh, 1, the words *heirs of the body* will indeed yield to a particular intent that the estate shall be only for life, and that may be from the effect of superadded words, or any expression showing the particular intent of the testator, but that must be *clearly intelligible and unequivocal."*

And in *Fulton* v. *Harman,* 44 Md. 264, it is said that "where the limitation of a remainder is to the *issue or heirs* of him to whom the preceding estate for life is limited, if the term *issue or heirs* is clearly intended as descriptive merely of the persons to take in succession, and thus become the root of a new inheritance, the individuals embraced by such descriptive term, take as purchasers, and do not, therefore, come within the rule in *Shelley's case.*  When the word heirs is taken as a word of limitation, it is collective, and signifies all the descendants in all generations; but when it is taken as a word of purchase, it may denote particular persons answering the description at a particular time, and in a special sense, according to circumstances."

In the recent case of *Reilley* v. *Bristow,* 105 Md. 332, where all the cases relied upon by the appellees on this record are considered, JUDGE PEARCE said: "There is no more doubt under the Maryland than under the Pennsylvania cases that where there is no expression to rescue the case from the application of the rule, it does not matter that the testator's intention may be defeated, as is clearly shown in

*Smith* v. *Clarke,* 49 Md. 106-120, but the Courts of this State have always struggled against the application of the rule and have searched the will or deed for some inconsistent provision or word which would exclude its application." He further said that this rule is not one "of universal or imperative application, and depends upon whether it will support or defeat the intention of the testator as deduced from the whole will."

Applying these principles to the will before us, it is manifest that the application of the rule in *Shelley's case* to the bequest to Sarah Gradwohl would wholly defeat the expressed will of the testator. If that rule be applicable to the bequest to her, the words "children or legal heirs" must be treated as words of limitation, that is to say, words marking out the extent and duration of her interest. By that construction her "children or legal heirs" would take nothing under the will, and the whole portion which the testator intended his daughter to take for life would be taken by her absolutely. Such a construction, which has neither reason, policy, justice, nor equity to support it, can only be sustained by giving to the words "legal heirs," which are superadded to the word children, the arbitrary meaning placed upon them "by an artificial rule of law."

We think it plain from the language and dispositions of the will that the testator did not intend to use the words "legal heirs" in their full technical sense, and that the language and provisions of the will plainly manifest a particular intent to use those words, in the bequest to his daughter Sarah, as mere *descriptio personarum,* or a particular designation of individuals who were to take as purchasers at her death. Such being the testator's particular intent in the use of the words "legal heirs" immediately succeeding the word children in the bequest to her, that intent will limit the strict, technical import of the words, and will also limit Sarah to a life estate in the portion bequeathed to her. As appears from the will, which we have quoted, the testator

first gave a life estate to his wife in his whole estate, he then made certain bequests to two of his daughters; he then directed that the balance of his estate should be equally divided among his five children or their heirs, share and share alike. Sarah Gradwohl was one of the testator's five children, and if he had concluded his will at this point, a different situation would have been presented. But he modified the preceding provision of his will, so far as it related to his daughter Sarah, by adding a proviso that her portion should be "invested in some safe stocks or securities, the said Sarah Gradwohl to receive the income form the same during the term of her natural life, and at her death to be equally divided among her children or legal heirs." His intention, therefore, to make a special provision as to Sarah's portion is plain.

The rule in *Shelley's case* is not a favored rule in the law of Maryland, although the Court will never refuse to apply it in a proper case. But where, as here, the particular intent of the testator not to use the words of inheritance in their full legal sense, those words, in the connection in which they are used in the will of Philip Weitzler, should yield to that intent, thereby withdrawing the case from the application of the rule. We decide that by the true construction of the will Sarah Gradwohl took only a life estate in the property thereby bequeathed or devised to her. It therefore follows that the appellees cannot convey to the appellant a good and merchantable title to the property mentioned in the contract of December 10th, 1909.

The decree appealed from will be reversed and the bill dismissed.

*Decree reversed with costs to the appellant above and below and bill dismissed.*

A motion for a re-argument was subsequently made and in disposing of the same.

BURKE, J., delivered the opinion of the Court.

The appellees have filed a motion for a re-argument of this case, and have assigned three grounds why the motion should be granted: 1. Because the decision impliedly but not distinctly overruled the case of *Cook* v. *Councilman,* 109 Md. 622. 2. Because while so apparently overruling that case it failed to refer to it, and, therefore, leaves counsel in doubt whether or not the *Councilman case* is to be considered as overruled. 3. Because this case is identical in language with the deed in the case of *Shapley* v. *Diehl,* 203 Pa. St. 568, which case was quoted with approval by this Court in case of *Cook* v. *Councilman, supra.*

It is stated in the motion "that the failure of the Court in this case to notice the decision of *Cook* v. *Councilman* above quoted, has resulted in two cases, one decided to be within the rule in *Shelley's. case,* and one decided not to be within that rule, when the two cases were identical. If it be intended by the Court to overrule the decision of *Cook* v. *Councilman,* of course, this motion will be denied; but if it is not the intention of the Court to overrule that case the appellees respectfully submit that the two cases cannot be reconciled and that this motion should therefore be granted. The prolongation of this brief could simply amplify but add nothing to the decision of this Court already made in the *Cook and Councilman case,* and counsel therefore considers that it is simply a question as to whether that case will be overruled or sustained, and as that is a matter that is not opened for argument, will not prolong the brief further."

It would be most unfortunate, indeed, if there were anything in the record to justify this criticism. This Court is not in the habit of overruling cases without stating that it intends to do so, and it is hardly conceivable that it would,

without mentioning the fact, overrule so recent and important a case as *Cook* v. *Councilman, supra.* The writer decided that case in the lower Court; but the language of the will of James B. Councilman, the elder, was so unlike the will in this case that it is difficult to conceive how anyone could imagine that the decision in that case had been overruled, or was intended to be overruled by anything that was said in the opinion in this case. That case was not overlooked, but was not discussed in the opinion, because · the language employed in the two wills was so widely dissimilar that the case afforded very little, if any, aid in the decision of the question before us. This will be apparent to anyone who will read the clause of Mr. Councilman's will with which the Court was dealing, and which will be found on *page* 637 *of* 109 *Md.* We will merely say that the two cases were not identical, as asserted by the appellees; that the case of *Cook* v. *Councilman, supra,* was not overruled, nor was it intended to be overruled, and that nothing has been said in the opinion in this case in conflict with the familiar rule announced in that case.

JUDGE BRISCOE, in the *Councilman case,* said: "In *Shapley* v. *Diehl,* 203 Pa. St. 568, land was conveyed 'to Shapley for the term of his natural life and at his death to his children or heirs.' The Court in that case held that the phrase 'children or heirs' means 'heirs of the grantee of the life estate,' the word 'heirs' being used as a synonym to enlarge and explain the preceding word, which might otherwise fail of its real intendment. The words, therefore, naturally and properly seem to express the intent that the donees in remainder should take not from the donor directly as purchasers, but in succession by inheritance from the grantee of the life estate."

It is stated in the motion that "this language would seem to be so clear that there could be no doubt as to its meaning,

and it was upon the authority of this paragraph that the counsel for the appellees advised them to bring this suit. The Court in its opinion in this case has neither affirmed nor overruled this language and counsel will be more in doubt therefore in the future as to which of these cases is to be the controlling one. Since this language was completely ignored by the Court in its opinion, counsel for the appellees take the liberty to assume that in someway it was overlooked, and especially since the deed in the *Shapley case* and the deed in this case are almost identical."

The question before the Court in this case was the construction of the last will and testament of Philip Weitzler, and not the construction of the deed from Riley E. Wright and wife to Sarah Gradwohl. The rents conveyed by that deed were simply taken as an investment under the order of the Orphans' Court of Baltimore City to be held according to the provisions of the will of Philip Weitzler, and, therefore, it would appear to be rather a misuse of the *Shapley case* to apply it to that deed. We venture to think that a comparison of the language used in the Shapley grant with that employed in the will of Philip Weitzler will show that the cases are not "almost identical."

SHAPLEY GRANT.

"For value received, I hereby convey and transfer all my right, title and interest to the property within mentioned to Joseph S. Shapley for the term of his natural life and at his death to his children or heirs."

THE WEITZLER WILL.

At the death of his wife, the testator disposed of his estate as follows: "Five hundred dollars and my piano to my daughter Mina Weitzler; five hundred dollars to my daughter Henrietta Weitzler; the balance of my estate to be equally divided among my five children or their heirs share and share alike, with this proviso: *That the portion to which my daughter Sarah Gradwohl may be entitled shall be invested in some safe stocks or other securities, the said Sarah Gradwohl to receive the income from the same during the term of her natural life, and at her death to be equally divided among her children or legal heirs."*

It was because of this special provision as to the share of Sarah Gradwohl that we held, upon the authority of the cases cited in the opinion, that the testator did not use the words "legal heirs" immediately succeeding the word "children" in the bequest to his daughter in their full technical sense; but that the language and provisions of the will manifest a particular intent on his part to use those words as mere *descriptio personarum* or particular designation of individuals who were to take as purchasers at his death. In such a case, under all the authorities, the rule in *Shelley's case* does not apply.

It is true the *Shapley case* was not expressly mentioned; but the opinion shows that it was not "completely ignored,"

or "overlooked," as it states that all the cases relied upon by
the appellees (among which was the *Shapley case*) were con-
sidered by JUDGE PEARCE, in *Reilley* v. *Bristow*, 105 Md.
332. Whether that case has been adopted as the law in
this State or not, it is obvious from the language employed
in the Weitzler will that it is not a controlling authority in
this case, because the facts of the two cases are widely dif-
ferent.

<div align="right">

*Motion overruled.*