Blas CHAVEZ, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

Nonie TENORIO, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 5775, 5776.

United States Court of Appeals Tenth Circuit.

Aug. 19, 1958.

Kenneth A. Patterson, Albuquerque, N. M., for appellant Blas Chavez, Jr.

William C. Marchiondo of McAtee, Toulouse & Marchiondo, Albuquerque, N. M., for appellant Nonie Tenorio.

J. C. Ryan, Asst. U. S. Atty., Albuquerque, N. M. (James A. Borland, U. S. Atty., Albuquerque, N. M., was with him on the brief), for appellee.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

Each of appellants has been found guilty by a jury upon a single count of a two count joint indictment charging violation of 21 U.S.C.A. § 174 by the unlawful receipt, concealment and aid in transportation of heroin. Chavez was convicted under count one alleging an offense involving 56 capsules of the drug: Tenorio under count two, involving 24 capsules. Before submission to the jury, the trial court dismissed count one as to Tenorio and count two as to Chavez. This appeal protests, first, the sufficiency of the evidence to sustain the convictions and, then, the refusal of the trial court to grant a mistrial upon either of two grounds: misconduct of the prosecuting attorney and failure of the trial court to propound a requested question to each of the prospective jurors.

The home and premises of Chavez, located near Albuquerque, New Mexico, were under constant surveillance by federal, state and city police officers from about 3 A.M. to 3 P.M. on July 4, 1957. The officers were staked at separate vantage points on neighboring property and were aided by the use of binoculars and walkie-talkies. They testified that considerable activity occurred at the Chavez premises during their watch. Chavez, Tenorio and several workmen were engaged in tarring the roof of the Chavez house, digging a cesspool, and other such innocent activities in and around the home. The appellants' labors were interrupted, however, by the incidents forming the substance of the government's proof of unlawful traffic in narcotics. At about 7:20 A.M. an unidentified person drove into the Chavez yard and was seen to enter the house. Tenorio then left the house, crossed the back lot and climbed the boundary fence into unoccupied Indian land. At a certain tree, designated in the record as tree 9, he stooped, scratched around, picked something up and returned to the Chavez house. Shortly thereafter, the unidentified visitor left. Throughout the morning and early afternoon this routine was repeated several times. A visitor would come to the Chavez home. Tenorio would go to tree 9, pick something up and return. The visitor would leave. Tenorio was also observed to have actually handed something to one visitor and to have received what appeared to resemble green currency in return. He made notations in a notebook during the course of the incidents.

The evidence leveled against Chavez was similar. He crossed lots twice but did not approach tree 9. Instead he was observed to go to a tree designated as 10, stoop and pick something up. Money was seen passed from Tenorio to Chavez during the course of the day.

At 3 P.M. appellants were arrested and 24 capsules of heroin were uncovered at tree 9 and 56 capsules of heroin at tree 10.

At the trial Tenorio offered no evidence in support of his plea of innocence.

Chavez denied through his own testimony any knowledge of or connection with the prohibited drug. He stated that the toilet facilities at his home were inoperative on July 4th and that it was necessary for him and others to go upon occasion to the neighboring woodland. His testimony upon this subject conflicted with that of government witnesses called in rebuttal.

We consider the combination of circumstances proved by the government to be sufficient to support the jury's verdict of guilty as to each defendant. More than a mere suspicion of guilt is created. Cf. Thomas v. United States, 10 Cir., 239 F.2d 7. Tenorio's repeated visits to the locale of the cache where he picked something up, returned to the house, handed something to a caller, received currency and made notations in a book need not be written off by reasonable minds as a series of coincidences. To the contrary, such activities are strongly indicative of the unlawful activity charged. Although not so complete in detail, the evidence against Chavez is similarly convincing. His trip to tree 10 coincided with the presence of a caller at his home. Money passed between him and Tenorio. Although he gave an explanation for his trips across-lots the government evidence both denied the need and fact premising his version of the activities. The jury was at liberty to disbelieve his testimony and by their verdict indicated they did so. The evidence sufficient to support conviction need only meet the burden of reasonable doubt, not all doubt.

Appellants next contend that they were denied a fair trial because of the misconduct of the prosecuting attorney in the cross examination of the defendant Chavez. Over objection, the prosecutor was allowed to ask Chavez the question: "You were one of the largest distributors of heroin in the City of Albuquerque, are you not?" The answer: "I am not." Then, "And those men that were with you out there, that day, Lovato and Perea, Lucero and Nonie Tenorio, are all pushers for you in heroin are they not?" The trial court did not allow this second question and admonished the District Attorney, after denying a motion for mistrial, thus " * * * I will tell you, I don't want you to pursue the same tactics, at all, and the jury will disregard the statements; in the event that the statements were included in the questions, disregard them."

Although it may be noted that the activities observed at the Chavez home on July 4 may well indicate a series of sales of heroin such was not the charge being considered in the instant case. Appellants were not accused of the unlawful sale of heroin and the questions were improper. But the asking of an isolated improper question by the prosecutor does not, per se, constitute improper conduct such as to deny the accused a fair trial. If such were the rule, a single adverse ruling by the court would vitiate all prosecutions. In Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, upon which appellants rely, the court granted a new trial because of the conduct of the District Attorney but stated:

"Moreover, we have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential." 295 U.S. 89, 55 S.Ct. 633.

In the instant case the conduct of the prosecutor was neither persistent nor prolonged and was not repeated in question or argument after the admonition by the court. We hold that the error was not prejudicial, being cured by the action of the court in censor and in instructing the jury to disregard the statements of the prosecutor. Knowles v. United States, 10 Cir., 224 F.2d 168. See McCandless v. United States, 298 U.S. 342, 56 S.Ct. 764, 80 L.Ed. 1205.

Lastly, appellants assert prejudice to them because the trial court failed to ask two particular prospective jurors a proposed question submitted by appellants for voir dire examination. The question suggested was No. 8 of 17 submitted by appellants and was phrased:

"Would any of you place a greater amount of weight upon the testimony of law enforcement officers over that of the defendants?"

The two prospective jurors who were not asked the question did not actually serve upon the jury but were challenged peremptorily by appellants. It requires, therefore, considerable speculative pyramiding to assume possible prejudice but since appellants assert that they were wrongfully required to use peremptory challenges in lieu of challenges for cause we consider the merit of question No. 8 in recognition of the importance of voir dire examination to assure a fair and impartial jury. See Consolidated Gas & Equipment Co. of America v. Carver, 10 Cir., 257 F.2d 111.

When it is anticipated that law enforcement officers may testify in a cause it is a proper subject of voir dire juror examination to inquire relative to the attitude of prospective jurors toward law enforcement officers. But the inquiry should be directed to the question of whether the prospective juror would give greater or less weight to the testimony of a law enforcement officer than to that of another witness *simply because of his official character*. A defendant cannot be fairly tried by a juror who would be inclined to give unqualified credence to a law enforcement officer *simply because he is an officer*. But the question propounded by these appellants did not so inquire but rather attempted to improperly search the juror as to whether he would believe a law enforcement officer over the defendants. The question has no proper probative effect unless qualified as we emphasize. Jurors have a right and duty to determine credibility and to believe, in a particular case, the testimony of a law enforcement officer over that of a defendant. They did just that in the instant case. A voir dire examination cannot search the result of the case in advance.

The judgment is affirmed.